*CHARLES L. SELZER, ADMR., v. OHIO & PENNSYLVANIA COAL CO.

1. RELATION OF FELLOW SERVANTS—ENGINEER AND DOCK LABORERS.

A person employed by a coal company to run a stationary engine, to operate its cranes and hoists for loading vessels and whose duties also require him to repair the implements used in removing the coal from the docks is a fellow servant of other employees of the coal company subject to the same control, paid from the same common fund and engaged in promoting the same object, and the company is not liable for his negligence in setting out a bucket for use which was defective and not properly repaired.

2. EVIDENCE—TESTIMONY OF NON-EXPERTS.

An employee of a coal company, who has no knowledge of machinery and appliances for loading vessels, except that acquired by seven or eight years work on the dock, if competent, in an action for personal injuries resulting from coal being prematurely dumped, to testify that "the spring was too weak to hold the bucket" should not have been permitted to add "and that is the reason that it dumped," and at least the latter part of the answer, not called for by the question, should have been stricken out.

3. SAME—ANSWER ASSUMING EXPERT KNOWLEDGE.

A non-expert witness should not be permitted to answer questions concerning which he has no more knowledge than men of ordinary information and intelligence. Under this rule, the evidence of a dock laborer for a coal company, having no knowledge of machinery and appliances for loading vessels except that derived from several years' work, as to "what would be the result if a bucket filled with coal and the latch was not in its place when the engineer hoisted away with the bucket," was improper.

4. SAME—IRRELEVANT AND PREJUDICIAL EVIDENCE.

The president of the coal company, in such action, should not have been required to answer an inquiry as to whether or not the wages paid to dock laborers was the result of a combination of the coal companies, where such evidence could have no bearing on the issues of the case and might be prejudicial to the coal company with the jury.

MARVIN, J.

The case of the Ohio & Pennsylvania Coal Company against Selzer, administrator of the estate of Peter Wolf, deceased, is brought here upon

---

*The judgment of the circuit court in this case was affirmed by the Supreme Court, unreported, 57 Ohio St., 644 [50 N. E. Rep., 1133].

petition in error to reverse the judgment of the court of common pleas of this county. Suit was brought by the administrator, Selzer, against this plaintiff in error, The Ohio &.Pennsylvania Coal Company and two natural persons, but dismissed by the plaintiff as to the two natural persons, whose names I do not recollect, and prosecuted against the corporation; if not dismissed, abandoned as to the two. The trial in the court of common pleas resulted in a judgment in favor of the plaintiff below, and it is to reverse that judgment that this proceeding is prosecuted in this court.

The petition, the amended petition, on which the case was tried, sets out in substance that Peter Wolf was employed by this plaintiff in error as one of a gang of men to load coal from the docks of the coal company, upon vessels in this harbor, and that while so employed on September 19, if I remember rightly, perhaps 1890, he was killed. That his death was caused, the petition says, by reason of the negligence of the plaintiff in error, the defendant in the court below, without any negligence or fault on the part of the decedent.

It seems that in the work of loading coal upon the vessel, among the devices employed are large buckets holding some of them a ton and some of them a ton and a half of coal, or thereabouts; and then a derrick and hoist operated by steam; and when the buckets are filled they are hoisted by this device, derrick, and swung around to the proper place and dumped into the vessel. The buckets have bails fastened to lugs on the side of the buckets, that is to say, they pass over those and are held to their place, they lift the buckets, the bails, by reason of being placed over these lugs; and the buckets are constructed with a rim about the top, and that rim has in it an opening place for a latch to catch in, which by proper mechanism is arranged to fall in or get into this slot or opening. There is a spring which operates against this latch or clutch, that certainly is for the purpose of getting the clutch into the slot or opening in the rim of the bucket, and it is claimed by the defendant in error, that the spring is for the purpose of holding in place the clutch or latch when it has got into the opening on a rim of the bucket designed for it. I don't know that it is denied by anybody that a part of the purpose of that spring is to hold the latch or clutch in place after it is gotten into the proper place. The petition sets out that the sole cause of the accident was because of the defective condition of the bucket, the bail, and the spring, perhaps the latch; with quite a good deal of stress it was urged in argument, and indeed in the evidence seems to have been the chief matter in contention as to just what the purpose of the spring was, how far the purpose of the spring was to hold this latch or clutch into position and as to whether that spring was a suitable one at the time that this accident happened. The facts seem to be that the bucket was loaded with coal, raised by the steam apparatus up the proper distance so as to swing out over the vessel, and it should have remained in that position until it had got out of the place where it was desired to overset it, when there was a device by which a man employed for that purpose could pull a rope or cord, throw the clutch out of its position in which it held the bail up, keep the bucket in an upright position, and then the bucket, by reason of the fact that the bails are below the center of gravity, after the bucket is full the bucket would overset. This bucket did not hold its position until it had

reached the place where it would have been overset by the pulling of the cord, but did overset and throw out the coal before it was designed that it should. The decedent was at work under the place where the coal fell, and was killed.

Among other things that is claimed in the petition in error, among other errors claimed, is that the verdict is not sustained by sufficient evidence, and is contrary to the evidence.

Upon that point we are not prepared to say; we do not say that this case would be reversed because of the fact that there was not sufficient evidence to show that the spring was weak, and too weak to hold the bail, or to hold the bucket in the proper relative position to the bail, although some of us at least have some doubts as to whether the evidence would sustain the verdict; but we are not prepared to say that the judgment should be reversed on that ground.

A considerable amount of evidence was introduced on the part of the defendant in error, a good many questions were asked on the part of the defendant in error, which were allowed to be answered by the court in the trial of the cause, which are claimed by the plaintiff in error to have been to its prejudice, and to have been improperly allowed to be answered.

A man by the name of Adolph Hagan was a witness placed on the stand by the defendant in error, who had worked on the dock for seven or eight years, and beyond that, so far as anything is disclosed in the bill, had no special means of being able to judge of whether devices that were there used were proper or not. On page 27 of the bill of exceptions that witness was asked this question: "Mr. Hagan, you can describe that spring. Tell us how the spring was," speaking of this spring that works against the clutch or latch that should be in a slot or opening in the rim of the bucket so as to hold the bucket and bail in the proper relative position. Objection was made to that question; that objection was overruled. The witness answered, "That spring was so light that it couldn't hold the bucket, and that is the reason that it dumped." The defendant below moved to strike that answer out, to take that from the jury. That was overruled by the court and an exception is taken to that. Without saying whether this case should be reversed for that and like questions, some of us at least, and I don't know but the entire court think it is very doubtful whether that answer should have been permitted to stand. The witness answered more than he was inquired of, first, saying that the spring was so light that it couldn't hold the bucket, and then he added, "and that is the reason that it dumped," certainly assuming to have knowledge, I think, expert knowledge, as to why the bucket dumped. And, as I said, without saying that we would reverse for that, we think it very questionable whether the court ought not to have taken from the jury at least that much of the answer "and that is the reason that it dumped," if not the entire answer.

On page 163 of the bill of exceptions, Mr. Zerbe, the president of the coal company, was put upon the stand by the defendant below. He testified, upon questions being put to him as to the way in which the men were employed on the dock of the coal company, that they worked for different parties on the dock; worked on the dock of this company when there was work for them by this company, work to do, and then was asked, as is found on page 163 of the bill of exceptions, this question, having said that the men received eleven cents, if I remember

rightly, per ton, he had testified, as I said, as to the manner of payment and the amount that was paid, as I recollect, eleven cents per ton—but whatever the amount, this question was then asked him by counsel for the defendant in error: "Was that done by the representatives of the different coal companies in this city getting together and saying, 'We will pay eleven cents per ton for filling.'" That question was objected to, the objection was overruled, and the witness answered "Yes."

It seems to us doubtful whether that ought to have been permitted to be answered. How it could bear upon any issue in this case it seems to me, and to all of us, very difficult to answer. Whether it would not be likely to prejudice the defendant below is a question, which though we do not undertake now to determine, it seems to us very questionable whether that was not calculated to prejudice the defendant below, and that it could not by any possibility aid the jury in determining what ought to be done.

Later on, toward the close of the testimony, on page 302 of the bill of exceptions, one John Smock was testifying he was working on the dock when Wolff was killed, and testified that his working at that time was the fifth summer that he had worked there. Then he was asked by the plaintiff below, "What would be the result, if a bucket was filled with coal and the latch was not in its place when the engineer hoisted away with the bucket?" There had been evidence tending to show that a bucket might overset before the proper time, even though the spring worked all right against the latch by the fact that the latch was not in place when the bucket was hoisted; and against that the claim was made that if the reason for the oversetting before the proper time was because the latch was not in place, then the oversetting would have come immediately upon the beginning to hoist the bucket. It was urged, at least questions were asked, upon the theory that there might be such friction of the latch against the rim as that that oversetting would not immediately take place even if the latch were not in place when the hoisting began. Now, as bearing upon the question as to whether there could be a hoisting of the bucket, and an oversetting before the proper time when the clutch was drawn off, if it was caused by the clutch not being in place, whether there could be that oversetting without its being immediately upon the lifting, this question was asked as bearing upon that. "What would be the result, if a bucket was filled with coal and the latch was not in its place when the engineer hoisted away with the bucket?" It seems very doubtful whether that witness should have been permitted to answer that question. The only reason why a witness should be permitted to answer any question is that he may be able to tell the jury something which they do not know. It is the only reason why witnesses should be permitted to answer questions. An expert is allowed to answer questions because of the fact of his peculiar and special knowledge. He knows those things which the average man does not know. But this man was not an expert, unless by reason of the fact that he had worked there several summers, would make him an expert to know what would cause a bucket to overset. I think it is very doubtful whether that man could have any knowledge about it that any man of ordinary intelligence would not have.

But, however, that may be, and without undertaking to say that this would be reversed by this court on account of any thing that occurred in the trial, to which attention has already been called, we

come to the question of the charge of the court. Or perhaps, before that, I ought to say, that evidence was introduced tending to show that the bucket which overset and caused the accident, had been set aside as not in proper condition to use prior to this accident; that the attention of Adam Kaiser, who was the engineer, whose business it was to run the engine that did the hoisting—that his attention was called to the fact that the spring was not of sufficient strength on this bucket; and that in addition to his duties as engineer it was his duty to see that proper repairs were made on the devices about that dock used in connection with the business of loading the vessels by this coal company; that it was his business to see to the repairing of those devices. Such of them as he could repair himself, he was to repair, and others he was to have repaired. Now, he was on the witness stand, and examined on that subject, and it appeared, and other witnesses testified that it was his business to see to the repairs; his business was to run that engine in connection with the loading of the coal, and further to see to these repairs. And of course it was urged on the part of the defendant below that that made him a fellow-servant with Wolff who was killed. And urged on the other side that that did not constitute the two men being fellow-servants. And the court did charge on that subject, necessarily charged on that subject, under the situation that case was in, and from the pleadings in the case, the evidence.

The court charged—first stated the issues and stated them properly; stated properly that the plaintiff below must show more than a sufficient, or I think, more than a probability that the negligence of the defendant below caused the accident. In short, charged, as we think properly, and right up to the point from which I read on page 314: "If, however, in this case you shall be satisfied from the evidence that the defects, if any existed, in construction or use of the bucket in the particulars named, did exist, and the workmen, among whom was the deceased, caused the same to be set aside for repairs, and the defendant undertook through the engineer to repair the same and did repair it, and returned it to its place for use by Peter Wolff and his co-employes in the use of said bucket, without fault on his or their part, but solely because the bucket was not properly repaired or was still in an unsafe and unfit condition for use, and the death of Peter Wolff was caused solely by reason thereof, then the defendant would be liable, if you should find the second proposition in favor of the plaintiff." And followed with this:

"I have used the term 'fellow-servant' or 'co-employe.' By that I mean those engaged with Peter Wolff in the employ of the defendant, being subject to the same general control, paid from the same common fund, and engaged in promoting or accomplishing the same common object. In this case, however, if you shall be satisfied from the evidence that the engineer, before and at the time of the killing of Peter Wolff, was not only employed by the defendant and subject to the same general control, paid from the same common fund and engaged in promoting or accomplishing the same object, but in addition thereto had exclusive control over the repairs, if any were needed, or to be made upon the buckets in the three particulars named in the petition, then I say to you, in that particular he would stand for the company and would not be the co-employe in that particular with the deceased, Peter Wolf, or those engaged in the same labor that he was engaged in at the time of his death; and for any omission or commission on the part of the engineer, in so far as he undertook to repair or have the repairs made.

upon the bucket in question, if the repairs consisted in any one or all of the three particulars named in the petition, that the company or the defendant would be liable for his negligence, if any existed on his part in that particular."

Now, we think that charge was erroneous. It seems to us that the Supreme Court of Ohio have settled the law to be different from that given in this case by the trial court.

Columbus & Xenia Railroad Co. v. Webb's Admr., 12 Ohio St., 475, the court, in the second paragraph of the syllabus, used this language:

"If the existence of such defect at the time of the accident, was owing to the neglect of other operatives of the road, supposed to be competent, whose duty it was to have inspected said brake, but who neglected so to do, and negligently suffered the same to continue in use, when not road-worthy, unknown to the company, it is not liable therefor, inasmuch as such delinquent inspector is to be regarded a fellow-servant of the brakeman, in a common service."

This is a case where the brakeman was injured, and suit brought against a company and defense made among other things, that whatever negligence there was that caused the injury was the negligence of a fellow-servant; and that fellow-servant was one whose business it was to inspect and see that the brakes were in proper condition. And on page 494 of this report, in this same case, Judge Sutliff, in delivering the opinion of the court, uses this language:

"There is still another consideration which must necessarily qualify the right of such employee to claim as due from the company a perfect brake. It appears from the record that the service of the intestate was rendered in common with many other servants, in the business of operating the trains upon the road; and it also appears that it was the duty of certain of the servants so engaged in the common service to inspect the chains of the brakes, and to see to the condition of the machinery, etc., and take care that the train should in all respects be in a road-worthy condition. If, then, the defect of the chain was owing to the neglect of the co-servant of the deceased, whose duty it was to inspect the chain at the time; for such neglect, his employer, the railroad company could not be held chargeable." And then cites a considerable number of authorities. Without stopping to read from others that case has been cited with approval by the Supreme Court of this state, in Dick, Admrx., v. Railroad Co., 38 Ohio St., 389. And again in Little Miami Railroad Co. v. Fitzpatrick, 42 Ohio St., 318. And in that case, which is a somewhat similar case, the case from which I have just read is discussed and approved, as I have said already approved in Dick, Admrx., v. Railroad Co., *supra*.

Now, without looking for authority outside of the state of Ohio, and it seems to us to be unnecessary when the authority in Ohio seems to be so directly in point, we reverse the judgment of the court of common pleas, because of the error of the charge in the particulars to which I have called attention. We do not find any error in the refusal of the court to charge as requested by the plaintiff in error. We think that to the extent that the plaintiff in error was entitled to have given to the jury the matter contained in those requests—to the extent he was entitled to have it, it was given, except in so far as they would be modified in this, as we say, erroneous charge that was given.

The case is reversed and remanded.